IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KATHRYN ANN HEMETEK

v.                                    CIVIL ACTION NO. 3:11-0579
                                      (Criminal Action No.  3:08-00198)

UNITED STATES OF AMERICA

MEMORANDUM OPINION AND ORDER

Pending is Movant Kathryn Ann Hemetek's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 29 U.S.C. § 2255 (ECF No. 67), and several related motions: a Motion for Bond (ECF No. 72), a Renewed Motion for Bond (ECF No. 87), and a Motion to Amend the Motion to Vacate (ECF No. 112).

This action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  The Magistrate Judge has submitted Proposed Findings and Recommendations, and recommended that the Court deny the Motion to Vacate. Movant Hemetek has submitted objections.   The Court has reviewed the pleadings and objections de novo.  For the reasons given below, the Court **DENIES** Hemetek's objections. The Court **ADOPTS** the Magistrate Judge's Findings and Recommendations (ECF No. 107) and **DENIES** the Motion to Vacate ( ECF No. 67).

## I.      Background

Movant Kathryn Hemetek was charged in a one-count indictment with knowingly and intentionally manufacturing 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1). ECF No. 1.  This charge carries a 60-month mandatory minimum sentence.  Following a jury trial, Hemetek was convicted of the charge (ECF No. 35) and sentenced to 60 months imprisonment (ECF No. 45).  She appealed her conviction to the Fourth Circuit Court of Appeals, which affirmed this Court's judgment.  ECF No. 63.  Hemetek timely filed a Motion to Vacate (ECF no. 63), and a Motion to Expand the Record (ECF No. 68), which were referred to Magistrate Judge Cheryl Eifert (ECF No. 80).  Hemetek also filed a Motion for Bond (ECF No. 67), and a Renewed Motion for Bond (ECF No. 87).  Following an evidentiary hearing on the Motion to Vacate and the Motions for Bond (ECF No. 105), the Magistrate Judge issued Proposed Findings and Recommendations ("PF&R"), recommending that the Motion to Vacate be denied, and this action dismissed (ECF No. 107).  The Magistrate Judge also issued PF&R recommending that the Motions for Bond (ECF Nos. 72, 87) be denied (ECF No. 108).  Hemetek timely filed Objections to the Magistrate Judge's PF&R (ECF No. 115), and also filed a Motion to Amend Original Motion to Vacate (ECF No. 112).

## II.      Standards

### (1)      28 U.S.C. § 2255.

Hemetek brings her claims under Title 28 United States Code section 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

> impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Hemetek alleges that she is in custody in violation of the Constitution of the United States because her trial counsel was ineffective, in violation of her Sixth Amendment right to counsel.  U.S. Const. amend. VI.

The pending motion to vacate was referred to Magistrate Judge Cheryl Eifert for proposed findings and recommendations.  Title 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Habeas Procedure 10 authorize a magistrate judge to conduct proceedings under § 2255.  When a Motion under § 2255 has been referred to the magistrate for proposed findings of fact and recommendations for disposition, a party may file objections to those proposed findings and recommendations.  The district judge must then "determine de novo any proposed finding or recommendation to which objection is made.  The judge may accept, reject, or modify any proposed finding or recommendation."  Fed. R. Habeas P. 8(b).

Additional steps are necessary when the magistrate judge's proposed findings and recommendations rely on new evidence developed in post-conviction proceedings, such as testimony given at the evidentiary hearing held by the magistrate judge in this case.  *See* ECF No. 105.  At that hearing, Movant Hemetek and her trial counsel, T. Louie Price, gave contradictory testimony about the advice and information Price gave Hemetek as trial counsel and at her sentencing.  Resolution of Hemetek's § 2255 claims requires several credibility determinations regarding these divergent testimonies.  The Magistrate Judge determined that Price's testimony regarding the disputed facts was more credible.  The pending objections challenge these credibility determinations.

Where, as here, "a party files objections to the magistrate judge's credibility findings, the district court must undertake de novo review of the record, which includes reading the transcript of the evidentiary hearing, but a de novo evidentiary hearing is not required if the court adopts the magistrate judge's recommendation." *Wildermuth v. Furlong*, 147 F.3d 1234, 1236 (10th Cir. 1998); *see also Wimmer v. Cook*, 774 F.2d 68, 74 (4th Cir. 1985) (district court must review record when performing de novo review of testimony heard by magistrate judge); *Fuller v. Warden, Maryland Penitentiary*, 861 F.2d 263 at *1 (4th Cir. 1988) (unpublished) ("Our review of a district court's de novo review process is perhaps most critical when the district court must review a magistrate's credibility determinations which a party specifically challenges."). The required de novo review consists at least of a review of a transcript or recording of the testimony at issue. *See Wimmer*, 147 F.3d at 76 (failure to review a transcript of the challenged testimony reversible error); *Fuller*, 861 F.2d at *1 (court must review a recording or transcript of the hearing). In this case, the Court's de novo review of Hemetek's objections has included a review of the transcript of the evidentiary hearing at issue, filed June 11, 2012, at ECF No. 117. As the Court adopts the Magistrate Judge's proposed findings and recommendations, no second evidentiary hearing is required. *See Wildermuth*, 147 F.3d at 1236.

**(2)      Assistance of Counsel**

Hemetek states several claims for habeas corpus relief, all of which assert that her trial counsel was ineffective. The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. If an attorney's performance falls below a certain minimum level of professional competence, it may violate an accused's right to representation. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). A two-part test set forth in *Strickland* is used to determine whether an

4

attorney's performance is so deficient that it violates a defendant's right to effective assistance. *Id.* at 687. The first prong of *Strickland* requires a movant to show that her attorney committed an error that fell below a reasonable standard for professional competence. *Id.* The reasonableness standard is an objective inquiry, which contemplates a wide range of acceptable and professional representation. *Id.* at 689. The second prong of the test requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In all cases, however, "[j]udicial scrutiny of counsel's performance must be highly deferential" and a reviewing court must avoid second-guessing counsel's decisions with the benefit of hindsight. *Id.* at 689.

### III.    Hemetek's Claims &Objections

Hemetek's Motion to Vacate claims that her trial counsel was constitutionally ineffective in several ways: 1) he failed to inform her of the mandatory minimum sentence attached to the charge she faced, 2) failed to tell her about plea offers from the government; 3) failed to counsel her such that she could receive the "safety valve" reduction at sentencing; 4) failed to object to the court's decision not to award the safety valve reduction at sentencing; and 5) failed to reasonably present and cross-examine witnesses at trial. ECF No. 67 at 1-3. The Magistrate Judge's PF&R closely scrutinized and rejected each claim. Hemetek submits eight objections to the PF&R, which this court reviews de novo.

**(1)**

Hemetek objects to the list of her contentions set out by the Magistrate Judge at pages 10-11 of the P& FR. She states they exclude her contention that "trial counsel failed to effectively

advise Hemetek of the elements of the offense and otherwise counsel her so that she would be eligible for 'Safety Valve' relief at sentencing."

Hemetek's original § 2255 Motion did not include an allegation that she was misinformed about the elements of the offense.  This issue, therefore, is not properly before the Court as an objection and it is **DENIED**.  Hemetek has, however, filed a Motion to Amend her original § 2255 Motion to add this claim.  The Motion to Amend is discussed later in this opinion.  To the extent this objection refers to "otherwise counseling" Hemetek so that she would be eligible for safety valve relief at sentencing, the objection is repeated as objection number eight and addressed in that section.  *See infra* Part IV.

**(2)**

Hemetek objects to the finding that she fails to establish by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness. This objection is nonspecific, and as all of Hemetek's claims are ineffective assistance of counsel claims, the only fair reading of the objection is as an omnibus objection to all findings regarding all her § 2255 claims.  *See* Fed. R. Civ. P. 72(b) ("a party may file *specific* written objections to the proposed findings and recommendations") (emphasis added); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (clear error rather than de novo review applies "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.").  The Court finds no clear error in the Magistrate Judge's finding that Hemetek fails to establish by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness.  However, in objections three, five, and eight, Hemetek has also more specifically objected to the

reasonableness determinations made regarding specific allegations of ineffective assistance of counsel—objections which the Court reviews de novo.

**(3)**

Hemetek specifically objects to the finding that trial counsel's strategy fell within the range of acceptable professional conduct, alleging that trial counsel misunderstood the elements of the charged offense.  As with Hemetek's first objection, this issue was not raised in the original Motion to Vacate, and so is addressed instead as part of the Motion to Amend.

**(4)**

Hemetek objects to the finding that she did not suffer prejudice from counsel's trial strategy, specifically his failure to call her mother as a witness.  The proposed testimony of her mother was that Hemetek was off the property where marijuana was found frequently during the summer of 2005, when the marijuana was being cultivated.  Hemetek alleges that in "implementing counsel's strategy it was important to show that Ms. Hemetek was involved in activities off the farm."  ECF No. 115, at 2.

Hemetek's allegations regarding counsel's failure to call and cross-examine certain witnesses fail both prongs of the *Strickland* test for ineffective assistance of counsel claims.  The first prong, reasonableness, requires a showing that counsel's trial strategy was objectively unreasonable.  In general, reviewing habeas courts are cautioned to avoid second-guessing a trial counsel's assessment of proper litigation strategy.  *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004).  Trial counsel's decisions regarding witness examination are precisely the sort of strategic decisions which receive "enormous deference" from reviewing courts.  *Id*.  Applying this standard, Hemetek has not shown that trial counsel's decision not to call her mother as a witness was objectively unreasonable.

Hemetek also fails to establish the second prong of the *Strickland* test, prejudice.  The Court agrees with the Magistrate Judge that Hemetek cannot show that she was prejudiced by trial counsel's decisions on the calling and questioning of witnesses.  A showing of prejudice under *Strickland* requires not just the demonstration of some possibility of damage to Hemetek's case at trial, but "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Given the weight of the evidence against Hemetek, which included the marijuana plants seized from her property, evidence that she had previously ordered and tried to grow marijuana seeds, her own statements, and the statements of her son, she has not shown a reasonable probability that her mother's testimony would have changed the outcome of the case.  This objection is **DENIED**.

**(5)**

Hemetek objects to the finding that trial counsel informed her of the five year mandatory minimum sentence applicable to the charge she faced.

Hemetek claims she was not told about her exposure to a five-year mandatory minimum sentence, while trial counsel claims he told her about the mandatory minimum many times, and attempted to secure a more favorable sentence through a plea agreement.  The Magistrate Judge heard testimony from Hemetek and trial counsel on this issue and credited trial counsel's testimony.

Reviewing the hearing transcript and the pleadings de novo, the Court agrees.[1]  Trial counsel testified that he frequently represents clients facing charges carrying mandatory minimum sentences (Tr. 47-48) and that he was aware of the specific mandatory minimum in this case (Tr. 48).  He also testified that attempted to secure plea agreements from the United States Attorney's office that would relieve his client from the mandatory minimum (Tr. 54-56),

---

[1] Citations to the hearing transcript refer to the corrected hearing transcript filed June 11, 2012, at ECF No. 117.

testimony confirmed by the proposed plea agreement prepared by the United States Attorney's office shortly after Hemetek's arraignment (ECF No. 106, Ex. 2, at 1-8) and email communications regarding a potential information plea sent shortly before the trial (ECF No. 106, Ex. 2, at 9).  His personal notes confirm that he explored what Hemetek's guideline sentence would be "if no stat. min."  ECF No. 106, Ex. 1, at 12.  Further, when testifying, Price displayed an explicit recollection of meeting with his client to discuss the benefits of a plea agreement in relieving her of the mandatory minimum (Tr. 58).

In contrast, Hemetek's testimony that Price never told her of the mandatory minimum sentence consisted chiefly of repeated assertions that he simply never mentioned the sentence.  *See, e.g.*, Tr. 10, 11.  She attempted to bolster these assertions with testimony from two friends, Walter Farmer and James Wilson, who stated that they went with Hemetek to meet with Price, and that Price never mentioned a mandatory minimum sentence in those meetings.  Tr. 33, 39.  Although Hemetek asserts that either Wilson or Farmer attended all of her in-person meetings with Price (Tr. 10), Price, Farmer, and Price all contradicted this assertion in their testimony.  Tr. 35 (Farmer knew that Hemetek met with Price at other times, without him); Tr. 42 (Wilson met with Hemetek and Price just once); Tr. 58 (Price gave details of at "least one very specific conversation" about Hemetek's possible sentence where no third parties were present).  Additionally, Price testified that he generally did not discuss whether a client would plead guilty with third parties present (Tr. 55-56), a practice that would have largely precluded discussion of the mandatory minimum and ways to avoid it with Farmer or Wilson present.  Price's testimony is consistent with the evidence presented at the hearing.  Hemetek fails to put forth any proof other than her own bare assertions that Price, an experienced defense attorney, was either

unaware of the statutory minimum sentence or willfully failed to inform her of it.  The Court therefore **DENIES** Hemetek's objection.

**(6)**

Hemetek objects to the "assertion" in the PF&R that "to this day, [Hemetek maintains] that she is entirely innocent of cultivating the marijuana plants found on her property in 2005."

Hemetek has given varying accounts of what she knew about the marijuana on her property.  At least as late as her sentencing hearing, she did not admit that she was involved in growing marijuana, or even that she knowingly allowed someone else to grow and dry marijuana on her farm.  Tr. 27.  At the post-conviction evidentiary hearing, Hemetek testified that she "knew" Mike Neal was growing marijuana while living at her farm, but thought the plots of marijuana were located elsewhere.  Tr. 16.  In the same testimony, she stated that she wanted Neal to testify at her trial in order to admit that he, and not she, was responsible for the marijuana.  Tr. 15.  Further, even if Hemetek had admitted her conduct at the evidentiary hearing, acceptance of responsibility is determined at the time of sentencing, and so any post-sentencing admission would have no effect on her conviction and sentence.  Therefore, the Court **FINDS** that Hemetek has not admitted involvement with cultivating the marijuana found on her property and **DENIES** this objection.

**(7)**

Hemetek objects to the "implied finding" that she was not still receiving threats from Mike Neal as of the date of the trial.  This implied finding was part of the Magistrate Judge's determination that Hemetek's explanation for why she did not accept responsibility for her crime was not credible.  Although Hemetek's post-sentencing explanation for why she did not accept responsibility has no effect on her eligibility for acceptance of responsibility, the Court

nonetheless reviews de novo the hearing transcript relating to this explanation.  This testimony is not credible in that Hemetek has given any number of reasons for not accepting responsibility, including not only the threats from Neal, but also the alleged failure of her counsel to explain the potential sentence reduction associated with accepting responsibility.   Therefore, the Court **DENIES** this objection.

**(8)**

Hemetek objects to the failure of the Magistrate Judge to find that trial counsel was ineffective in failing to effectively counsel her so that she would be eligible for relief from the mandatory minimum under 18 U.S.C. § 3553(f), the "safety valve."

Although the stated objection is brief, the Court understands Hemetek to claim that she was not told that by pleading guilty or accepting responsibility at sentencing, she might be have been exempted from the mandatory sentence through the "safety valve" provision of 18 U.S.C. § 3553(f).

The Court has already determined that Hemetek was told of the mandatory minimum sentence in discussing Hemetek's sixth objection, above.   Similarly, the Court finds trial counsel's testimony credible insofar as he claims to have told Hemetek about possible plea agreements for sentences less than the mandatory 60 months.  This testimony is bolstered by trial counsel's notes and his email communications with the United States Attorney's office.  As with the mandatory minimum sentence, trial counsel's testimony that he did not routinely discuss guilty pleas with third parties is credible, and so the testimony by Hemetek's friends and family that they did not hear of a plea agreement during their meetings with trial counsel does not discredit trial counsel's testimony.  The Court finds that there were plea opportunities presented to Hemetek in this case, which she did not accept.

Hemetek also appears to allege that trial counsel either did not understand or did not tell her about of the "safety valve."  The "safety valve" statute provides for relief from a mandatory minimum sentence if a convicted individual meets five criteria:

> "(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement."

18 U.S.C. § 3553(f).

Two of these requirements are at issue in this matter.  The first, criminal history points, and the fifth, commonly called "acceptance of responsibility."

Hemetek alleges that counsel misunderstood her criminal history points and therefore erroneously believed she would not be eligible for the safety valve.  However, the Court finds that Price acted within the bounds of reasonable representation in regard to Hemetek's criminal history points.  At the evidentiary hearing, Price admitted that he had believed Hemetek likely

had two criminal history points, but also knew that the point total would not be finalized until a presentence report was prepared by the United States Probation Office.  Tr. 53, 67, 69-71. Ultimately, the probation office determined that Hemetek had only one criminal history point. Although Hemetek argues that this incorrect prediction demonstrates Price's misunderstanding of the safety valve in general, she does not show that Price misunderstood how criminal history points worked, nor does she show that any prejudice resulted from Price's alleged misunderstanding.  The sentencing court, not Price, determined Hemetek's points, and it ultimately determined that she only had one.  With one point Hemetek would have been eligible for the safety valve, if she had met the other four requirements.  As Hemetek cannot show that any prejudice resulting from Price's purported mistakes, she has no *Strickland* claim.

More central to Hemetek's objection is the argument that Price either misunderstood or failed to inform her of the "acceptance of responsibility" requirement of the safety valve.  Absent such advice, she alleges, she could not avail herself of the reduction by pleading guilty or by admitting responsibility at sentencing.

The fifth requirement of the safety valve, acceptance of responsibility, requires a defendant to provide all information relating to her criminal activity, and cooperate fully with the government.  18 U.S.C. § 3553(f)(5).  Price's testimony demonstrates that he knew of and understood the acceptance of responsibility requirement of the safety valve.  He correctly understood that acceptance of responsibility could be obtained even if a defendant did not plead guilty, and testified that he explained that fact to Hemetek.  Tr. 63.

Hemetek claims that she was not told of the opportunity to accept responsibility and escape the mandatory minimum.  Tr. 11.  She further claims that she would have accepted responsibility had she been told of it, answering in the affirmative at the evidentiary hearing

when her attorney asked, "if you had known that by fully cooperating with the United States you could have avoided the five-year mandatory sentence, would you have done that?"  Tr. 21.  This testimony is not credible for several reasons.

First, Hemetek's own statements at sentencing undermine this claim.  At sentencing, she stated that she could not "say that I did something I didn't do," a clear refusal to accept responsibility.  Sentencing Hrg. Tr., ECF No. 58, at 13.  She also stated, after conferring with her attorney, "I mean, I accept the responsibility because of the jury sentencing," *id*., an indication that she was in fact told that "acceptance of responsibility" was something she should demonstrate at sentencing.[2]  Second, acceptance of responsibility was mentioned by the judge at her sentencing, and in the presentence report, which defendant admits to reviewing.  Sentencing Hrg. Tr., ECF No. 58, at 14; Evidentiary Hrg. Tr., ECF No. 117, at 19.  These statements discredit Hemetek's statement that she was unaware of the acceptance of responsibility reduction.

Third, Price's actions throughout the pretrial, trial, and sentencing phases of representation bolster his testimony that he knew of and informed the defendant of the safety valve.  Price sought several plea agreements for the defendant.  ECF No. 106, Ex. 2, at 1, 9.  Although the safety valve reduction may be available to a defendant who does not plead guilty, a plea agreement may also offer a release from a mandatory minimum sentence.  That Price sought

---

[2]

> THE DEFENDANT: I just know that the whole truth didn't come out and that I did not commit this crime. So I couldn't say that I did something that I didn't do, and I just think that it was unfair that I was singled out for this offense.
>
> (Mr. Price and the defendant conferred privately off the record.)
>
> THE DEFENDANT: I mean I accept the responsibility because of the jury sentencing. And I just want to be close to my family at Alderson.

Sentencing Hrg. Tr., ECF No. 58, at 13.

such an agreement in the face of Hemetek's uncertain criminal history, which may have made her ineligible for the safety valve, evinces understanding rather than ignorance of the safety valve provision.  *See* Tr. 53, 55, 67.  For these reasons, the Court **FINDS** that Price did not unreasonably fail to counsel Hemetek such that she might qualify for the safety valve reduction. Thus, Hemetek does not establish the first prong of a *Strickland* claim.

Hemetek also fails to establish the second prong of a *Strickland* claim: a reasonable probability that but for counsel's failure, the result would have been different.  To this day, Hemetek has not fully provided information to the government about her conduct or any of the other people allegedly involved in her crime, a requirement for receiving acceptance of responsibility.  Tr. 26-27.  Although she testified that she would have done so if she knew of its potential benefit (Tr. 21), she also claims in her objections that she was in fact under threat from Mike Neal, implying that she could not fully cooperate regarding his involvement with the marijuana cultivation because of those threats.  Tr. 18.  Hemetek did attempt to cooperate against Mr. Neal in regard to later a stolen property crime in Ohio (Tr. 17), but never provided the United States with full information about his—or her own—participation in the marijuana cultivation.  Tr. 27; *see United States v. Ivester*, 75 F.3d 182, 185 (4th Cir. 1996) (to qualify for a safety valve reduction, a defendant must "demonstrate, through affirmative conduct, that [she has] supplied truthful information to the government" before sentencing.).  Despite asserting that she would have admitted responsibility at sentencing if she had been aware of its benefit under the safety valve, Hemetek still contends that she did not "actually commit the crime," a position inconsistent with accepting responsibility.  Tr. 19; 27-28.

Further, at the time of sentencing, neither the probation office nor the Court found defendant a good candidate for accepting responsibility.  ECF No. 106, Ex. 1, at 7 (probation

office recommendation to deny safety valve); Sentencing Hrg. Tr. 15, ECF No. 58 (court explaining to Hemetek that to qualify for acceptance of responsibility she was required to "accept responsibility for the crime and provide truthful information to the Government about it," and telling her: "I'm puzzled that it had to go this far and that you chose this route."). Given the extensive evidence of Hemetek's ongoing unwillingness to accept responsibility, the probation office's recommendation that Hemetek not receive acceptance of responsibility, and the Court's position that Hemetek had not accepted responsibility, Hemetek has not demonstrated a reasonable probability that she would have sought or been awarded acceptance of responsibility had counsel informed her of it and advocated for its application.

For these reasons, the Court **FINDS** that Price did not unreasonably fail to counsel the Hemetek so that she could receive the safety valve. Further, even if she could show that Price did not adequately counsel her, she has not shown a reasonable probability that but for this advice, the outcome would have been different—that she would have received the safety valve. Without making some showing of prejudice, she can make no *Strickland* claim. Hemetek fails to establish either prong of the *Strickland* standard with this objection, and so it is **DENIED**.

## IV.     Motion to Amend

Hemetek seeks to amend her § 2255 petition to assert an additional ground for relief: that her counsel, Mr. Price, did not understand or effectively explain the elements of the charged crime. "Burdened by this misunderstanding,'" she asserts, counsel failed to adequately explain the charge to her, and did not pursue a plea to a lesser charge. ECF No. 113, at 4.

Under Federal Rule of Civil Procedure Rule 15(a), leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment. *United States*

16

*v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000);[1] *see also Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (motion to amend may be denied if futile); *United States v. Davis*, 337 Fed. App'x. 300, 301 (4th Cir. 2009) (unpublished) (applying futility doctrine to a motion to amend a § 2255 motion).   Respondent contends that the motion to amend is futile, and should , therefore, be denied.

Hemetek responds that denying the motion to amend as futile is inappropriate at this juncture, and that she should be afforded the opportunity to explore her claims further.  ECF No. 119, at 2 ("if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).   In this case, however, the proposed basis for the motion to amend was explored, in depth, at the evidentiary hearing.   *See, e.g.*, Tr. 89 (cross-examination of trial counsel about elements of the offense); Tr. 95, 98 (defense counsel argument that trial counsel did not understand elements of the offense); Tr. 60 (trial counsel testifying that he discussed the elements of the crime with Hemetek and that the involvement of other people was discussed as a defense to the crime); Tr. 13, 15, 19, 26, 28 (direct examination of Hemetek about her understanding of the elements of the crime).   Exploration of this issue could only conceivably result in a hearing being held with the same witnesses, on the same topic of trial counsel's communication with Hemetek about the charges she faced and her potential exposure if convicted.   Therefore, the Court finds that further factual development of this argument is unnecessary.

---

[1] Pursuant to Rule 12 of the Rules Governing Section 2255 Proceedings, "courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a 2255 motion."  *Pittman*, 209 F.3d at 317.

Reviewing the ample record in this case, it is apparent that the proposed amended claim is futile. Hemetek cannot show by that counsel acted in an objectively unreasonable manner by misunderstanding or misinforming her about the elements of the marijuana cultivation charge.

At the evidentiary hearing Hemetek repeatedly asserted that trial counsel misinformed her of the elements of the charge against her, and told her that she could not be convicted unless the jury found that she and she alone had cultivated the marijuana. *See, e.g.*, Tr. 13, 15, 19, 26, 28. In the Motion to Amend she attempts to buttress this allegation by pointing to several statements made by trial counsel at the hearing. First, on cross-examination, trial counsel agreed with the statement, "you concluded that the government had to show that she was the person who actually grew the marijuana." Tr. 89. Also, trial counsel testified that his theory of defense was "that she didn't have the ability to do this on her own, that she didn't do it, and that somebody else had done it." Tr. 74. Hemetek argues that these statements show that counsel failed to understand that Hemetek "could be convicted as an aider and abettor" (ECF No. 113, at 4), thereby underestimating what the government had to prove to make its case against her. *See, e.g.*, *United States v. Duke*, 409 F.2d 669, 671 (4th Cir. 1969) (an individual may be convicted of aiding and abetting under an indictment charging only a principal offense).[3]

These arguments do not succeed. Trial counsel's testimony that he understood and informed Hemetek of the elements of the offense is more credible than Hemetek's contrary

---

[3]  Although Hemetek could have been convicted of aiding and abetting under the indictment in this case, the government's theory was that she was a principal, neither party sought an instruction on aiding and abetting, and only Hemetek put forth the possibility that others were involved in the cultivation. The jury found Hemetek guilty as a principal and had a substantial basis for that determination. *See, e.g.*, *United States v. Feury*, 993 F.2d 1540 at *2 (4th Cir. 1993) (table). (examining facts similar to the underlying crime in this matter and concluding, "There was also evidence to support the inference that, as resident of the house, it was the Appellant who cultivated the marijuana in the fields behind the house. The fields of marijuana were directly behind the house and were surrounded by hillsides with no neighbors. There were paths leading from the house to the fields; the only water source for the fields was from the house . . . a brown paper bucket that was found in the field matched another one found inside the house. . . . Thus it was fair for the jury to infer that the fields themselves were cultivated by the Appellant as resident of the house.")

testimony.   Further, trial counsel's statements at the evidentiary hearing do not reveal a misunderstanding of the law.  He agreed on cross-examination that "the government had to show that she was the person who actually grew the marijuana."  Tr. 89.  This is a correct statement of the law.  The indictment in this case alleges that defendant Hemetek knowingly and intentionally manufactured marijuana.   ECF No. 1.   This offense does not require that Hemetek alone committed the crime, nor does it require that she worked with others to do so.   Instead, it simply requires that Hemetek was purposefully involved in the criminal conduct.  *See* 21 U.S.C. § 841(a)(1).

Trial counsel's choice of defense strategy also does not demonstrate that he misunderstood the crime.  Trial counsel stated that the defense strategy was to try to implicate others in the scheme.  Tr. 74.  Throughout the evidentiary hearing and at other times in this case Hemetek has insisted that other people were responsible for the cultivation.   In pursuit of reasonable doubt, trial counsel advanced this theory before the jury, attempting to assign the cultivation to Vaughn Johnson, Hemetek's ex-husband, or Michael Neal, a former boyfriend.  Tr. 76 ("the defense was that she was not the one that was growing the marijuana.  We were trying to put it on somebody else.").  The strategy of suggesting to the jury that someone else might be responsible for the crime is neither unreasonable nor evidence that counsel misunderstood the charged crime.  The Court finds that Hemetek fails to establish that counsel behaved outside the ambit of reasonable professional behavior, and thus fails to satisfy the first prong of the *Strickland* standard.   Therefore, the Court **FINDS** that amending the § 2255 Motion to add a claim based on trial counsel's purported misunderstanding of the statute would be futile.   The Court **DENIES** the Motion to Amend.

## V.     Conclusion

Having **DENIED** the Motion to Amend (ECF No. 112) and Hemetek's Objections (ECF No. 115), the Court **ADOPTS** the Magistrate's Proposed Findings and Recommendations (ECF No. 107) and **DENIES** the Motion to Vacate (ECF No. 67).  Defendant's Motion for Bond (ECF No. 72) and Renewed Motion for Bond (ECF No. 87) are **DENIED as moot**.  Defendant did not object to the Magistrate's Proposed Findings and Recommendations concerning bond (ECF. No. 108).  The Court adopts the Magistrate Judge's conclusion.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.


ENTER:      September 6, 2012


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE